IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| WOODBINE PRODUCTION CORP., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-CV-01152-JDL |
| | § | |
| v. | § | |
| | § | |
| EAGLE TUBULARS, L.L.C., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Eagle Tubulars, LLC's ("Defendant") Motion to Exclude the Expert Testimony of Plaintiff Woodbine Production Corp.'s ("Plaintiff") Expert. (Doc. No. 66.) Plaintiff responded. (Doc. No. 67.)

**BACKGROUND**

Plaintiff rented a work-string and a PH6 and P110 pipe from Defendant to clean out an existing well. (Doc. No. 66 at 1.) The work-string became stuck in the well and when Plaintiff tried to free it, the pipe parted, resulting in sections stuck in the well. *Id.* at 1–2. Plaintiff brought this action alleging Defendant's pipe and work-string were not fit for their particular purpose as set forth by the API[1] standards. (Doc. No. 1 at ¶¶ 6–10.) Plaintiff identified Donnie Jones ("Jones") as a petroleum engineer who will testify at trial as an expert regarding "the reasonable and customary standards, duties and responsibilities of an operator in the oil and gas industry." (Doc. No. 66-5 at 2 (Plaintiff Expert Disclosures).) Plaintiff expects Mr. Jones to

---
[1] American Petroleum Institute

1

"testify that the API limits were never exceeded on this job and the pipe should have never parted. The pipe was defective and not fit for its ordinary and intended use." *Id.*

## LEGAL STANDARD

In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993).

To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. 579. Trial judges have traditionally been afforded wide discretion to admit or exclude expert evidence. *See Peters v. Five Star Marine*, 898 F.2d 448, 450 (5th Cir. 1990) (citing *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir.1986)); *see also Hamling v. United States*, 418 U.S. 87 (1974).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters*, 898 F.2d at 449 (citing FED. R. EVID. 702 advisory committee's notes (2000)). Assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992) (quoting *Eymard*, 795 F.2d at 1233); *see also Matherne v. MISR Shipping Co.*, No. 88-2261, 1991 WL 99426, at *2 (E.D. La. 1991) (excluding expert whose testimony "would offer little more than argument"). The district court's

responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. 579. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 151.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *See* FED. R. EVID. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire*, 526 U.S. 137). Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently

3

reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

### I. Qualifications

Defendant contends that Jones does not have the knowledge, skill, experience, training, or education to offer expert testimony concerning the pipe at issue. (Doc. No. 66 at 5.) Defendant argues that Jones has no significant experience with work-string pipe, and almost no experience with the P110 grade pipe. *Id.* Defendant states that Jones did not have the experience to assess how the conditions in the well affected the work-string's strength. *Id.* at 6. Defendant further argues that Jones is unqualified because he has no training in metallurgy and is not a professional engineer. *Id.* at 7. Plaintiff counters that Jones is qualified because he has a degree in petroleum engineering and has worked since 1977 in the East Texas oil patch. (Doc. No. 67 at 4.) Plaintiff maintains that he is familiar with, and has researched, the specifications used with the pipe strings used during the workover and to "fish" out the pipe. *Id.* Plaintiff argues that due to his experience and his review of the reports and other documentations, Jones is

4

qualified to give his opinion. *Id.* at 5. Plaintiff states Jones has specialized expertise in the area that is in question and has prior experience dealing with similar matters. *Id.* Plaintiff concludes that Jones does not have to be a metallurgical expert before he can testify why the pipe failed. *Id.* at 7.

Whether testimony will aid the trier of fact is the standard a court uses to determine an expert's qualifications to testify at trial. *Peters*, 898 F.2d at 449. A trial court has broad discretion in ruling on the qualifications of an expert. *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983). Courts have found that extensive experience in an industry can qualify an individual to testify as an expert. *See U.S. v. Austin Radiological Ass'n.*, No. A-10-cv-914, 2014 WL 2515696, at *2 (W.D. Tex. June 4, 2014) (citing *Huval v. Offshore Pipelines, Inc.*, 86 F.4d 454, 457–58 (5th Cir. 1996)); *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd.*, No. 5:13-cv-625, 2015 WL 12911344, at *2 (E.D. Tex. Mar. 31, 2015) ("[m]aking judgments about a witness with borderline qualifications necessarily requires a court to balance the costs and benefits of permitting the witness to testify as an expert").

In this lawsuit, Plaintiff alleges that Defendant's pipe and work-string were not fit for their particular purpose as set forth by the API standards. (Doc. No. 1 at ¶¶ 6–10.) According to Plaintiff, Jones will testify regarding the API limits used on this job, how the pipe should not have parted, and therefore the pipe was defective and not fit for its ordinary and intended use. (Doc. No. 66-5 at 2.) Although Jones may not have specific experience with P110 pipe or with the particular work-string at issue here, Jones is a petroleum engineer who has worked in the industry since 1977. (Doc. Nos. 66-5 at 5 (Jones's CV), 66-7 at 4, 6–7 (Jones's Dep.)) (discussing his experience working with system workovers like the one at issue in this case).) Jones has substantial experience working with pipe and through his work as a field engineer at

5

various locations, supervising different oil fields and maintaining the oil production facilities. *Id.* He is therefore qualified to testify in this instance because his extensive experience in the industry will help the trier of fact. FED. R. EVID. 702. As to Defendant's contention that Jones's does not have a background in metallurgy, he is not testifying as to the metallurgical properties of the pipe. Rather, he will testify about the standards and practices in the industry and the typical API limits. (Doc. No. 66-5 at 2.) Any lack of experience in the specifics of metallurgy goes to the weight to be assigned to the opinion rather than its admissibility. *See* FED. R. EVID. 702 Advisory Committee's Notes, 2000 Amendments

## II.  Reliable Opinions

Defendant also argues that Jones applied an invalid method to reach his conclusions. (Doc. No. 66 at 8.) Defendant argues that Jones reviewed documents but "did not describe what he did with those limited materials or how he came to his conclusions. His report and deposition testimony simply states his conclusions." *Id.* Defendant states Jones did not have the experience to assess the effect on the pipe, and did not know if the work-string was up to required specifications or was previously tested. *Id.* at 8–9. Defendant maintains that Jones made a faulty comparison to another product that had never been stuck in a well, and that he was not knowledgeable on the types of connections between individual pieces of pipe or on how they were used. *Id.* at 10. Plaintiff argues his opinion is reliable because Jones has significant experience in the fields and "knows what pressures the pipes can withstand, how much force can be safely applied to them and how much force they ought to be able to withstand if they are in good condition." (Doc. No. 67 at 9.) Plaintiff argues that Defendant ignores Jones's conclusion "that the Defendant's string failed multiple times under conditions where another string provided by another company that was subject to the same or similar conditions did not fail." *Id.* at 10.

6

In determining reliability, a court focuses on the expert's methodology, not the conclusions generated by it. *Orthoflex Inc. v. ThermoTek, Inc.*, 986 F.Supp.2d 776, 783 (N.D. Tex. 2013). The testimony must be "more than a subjective belief or unsupported speculation." *Id.* (internal citation omitted). If "'there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered,' the court may exclude the testimony as unreliable." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

In this case, Jones provides opinions on the reasonable and customary standards for an oil drilling operation, duties and responsibilities of an operator in the oil and gas industry, and on the API limits on a job such as the one at issue here. (Doc. Nos. 66-5 at 7 (Jones's Expert Statement).) Based on these criteria, Jones has opined concerning the suitability of the pipe for the drilling operation at issue in this lawsuit. *Id.*; (Doc. No. 66-7 at 9–21.) Jones discussed his analysis of the pipe and if it met API specification based on the review of the daily reports of the pressure placed on the pipe after it became stuck. (Doc. No. 66-7 at 11–12.) Jones noted the standard practice in companies is to use 80% of a pipe's value under API specification to determine the maximum pull on the pipe. (Doc. Nos. 66-5 at 7.) Jones found that the pipe parted three times at amounts not even close to this maximum pull. *Id.* Jones therefore concluded the pipe parted below the API specifications. *Id.* at 15. This testimony does not suffer from too great an analytical gap between Jones's opinion and the bases for his opinion. He provides opinions based on his review of the documents showing pressure placed on the pipe and his experience in the industry, and then determined the pressure used on this pipe did not meet the maximum allowed under the API specifications. (Doc. Nos. 66-5 at 7, 66-7 at 11–12.)

The Court finds Jones's methodology satisfies the standards of reliability for purposes of admissibility under Rule 702. Further, the testimony will provide help to the trier of fact about

the customary standards of the oil and gas industry, the pipes typical API specifications and the pressure typically used on a pipe. *See Daubert*, 509 U.S. 579. Defendant points to deficiencies in Jones's testimony based on his lack of knowledge to some of the factors in this event and a faulty comparison between two companies' work-strings and pipes. (Doc. No. 66 at 9–10.) However, such alleged deficiencies go to the weight to be assigned to his opinion, not the admissibility. FED. R. EVID. 702 Advisory Committee's Notes, 2000 Amendments.

## **CONCLUSION**

Accordingly, the Court **DENIES** Defendant's Motion. (Doc. No. 66.)

**So ORDERED and SIGNED this 1st day of November, 2017.**

*John D. Love*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE